FILED
Mar 18, 2026
04:13 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| **ARTHUR DAVIS,**<br>　　　　　**Employee**,<br><br>v.<br><br>**BAPTIST MEMORIAL**<br>**HOSPITAL - MEMPHIS,**<br>　　　　　**Employer.** | **Docket No. 2024-80-6993**<br><br>**State File No.  66854-2024**<br><br>**Judge Allen Phillips** |

## EXPEDITED HEARING ORDER

At a March 2, 2026 expedited hearing, Mr. Davis requested medical benefits for a shoulder injury and a heat stroke. Baptist contended neither injury arose out of his employment. Due to insufficient proof of work-related injuries, the Court denies Mr. Davis's request at this time.

## History of Claim

Mr. Davis worked for Baptist in environmental services. One of his duties was loading and rolling large waste bins to a dumpster. He said that on August 19, 2024, one of the two bins he was moving hit a dip in the grass near the dumpster, pulling his left shoulder.

When Mr. Davis returned inside, he began to feel dizzy and had difficulty standing. He went to Baptist's emergency room where he was diagnosed with an ischemic stroke and hospitalized.[1] He was later transferred to Baptist's rehabilitation center.

---

[1] An ischemic stroke is caused by a blood clot in an artery in the brain. Symptoms include sudden numbness and loss of coordination. https://www.stroke.org/en/about-stroke/types-of-stroke/ischemic-stroke-clots (Last visited March 17, 2026).

An August 19 emergency room record includes Mr. Davis's history of nausea, dizziness, and an unsteady gait that started at work. No shoulder complaints were recorded.

Mr. Davis was transferred to Baptist's rehabilitation facility on August 23, but complications required his readmission to the hospital eight days later. He received treatment for stroke-related symptoms and saw an orthopedist regarding his shoulder. An MRI showed a partial rotator cuff tear, and the orthopedist said Mr. Davis had no immediate need for surgery but might later see a specialist.

The records from that hospitalization also contain various versions of his injury history. He reported left shoulder pain of "sudden onset" with no history of trauma and was diagnosed with "acute" shoulder pain. When Mr. Davis underwent the orthopedic evaluation, he told the examiner that he "hit his shoulder." Another note records that he hurt his shoulder when he fell in an elevator at work and another that he reported a slip and fall.

After his discharge, Mr. Davis returned to the rehabilitation facility and stayed there until late September. None of those records contain an opinion regarding the cause of Mr. Davis's alleged injuries.

Jenny Seratt, who worked in Baptist's employee health department in 2024, testified that she handled only FMLA claims and referred workers' compensation claims to someone else. She was familiar with Mr. Davis because she handled several of his past FMLA claims.

According to her records, Mr. Davis reported by phone on August 20 that he had gone to the emergency room the day before and was diagnosed with a stroke. He did not know how long he would be off work, and Ms. Seratt explained the FMLA process. Mr. Davis opted to use his PTO time, and Ms. Seratt wrote: "He acknowledged all understanding and all questions [were] answered." Several other entries from August document Mr. Davis's progress in the rehabilitation hospital.

Then, on September 5, Ms. Seratt noted Mr. Davis called to say his "time off is WC" because "he was at work when it happened." He said that while pulling a trash bin through the grass, he hit a dip and he felt a "stabbing pain shoot up his shoulders." He went inside, felt dizzy, and then went to the emergency room. Ms. Seratt told him she would speak with her supervisor, Trent, for the next steps.

When Trent Riden, Baptist's assistant director of employee health, learned of

Mr. Davis's workers' compensation claim, he obtained videos taken from cameras near the dumpsters. Baptist played those videos, and they show Mr. Davis moving the bins, pushing one in front of him while pulling another behind. He crosses a grassy area and a sidewalk, but the Court sees no dip or other obstruction, and Mr. Davis does not react as if something were amiss.

Baptist denied Mr. Davis's claim on grounds that his injuries did not arise out of his employment. Mr. Davis continued to seek medical treatment on his own.

In October, he saw orthopedic surgeon Dr. John Lochemes, who recorded a history of a trash can going over a bump that caused Mr. Davis to hyperextend his left shoulder. He then had an ischemic stroke and "because of this, the left shoulder was not known about until later on." Dr. Lochemes said the rotator cuff tear "may have been due to the mechanism of injury" and recommended a neurology evaluation because of Mr. Davis's complaints of left-hand numbness.

Mr. Davis went to a neurology clinic where he reported his torn rotator cuff and stroke but gave no history of their cause. He remained off work and was concerned that he needed FMLA paperwork. The provider included a diagnosis of an incomplete rotator cuff tear "not specified as traumatic."

In February 2025, Baptist obtained an evaluation of Mr. Davis's shoulder from orthopedic surgeon Dr. Riley Jones. He documented Mr. Davis's history of moving the bins and that "when he went over a dip in the grass and onto the sidewalk" he suffered an injury. Dr. Jones reviewed the videos and said there "appears to be a small bump without much or any trauma to the left shoulder and in fact he did not even stop at that time." He looked at other records, including the ones documenting that Mr. Davis hit his shoulder or fell in an elevator.

After his evaluation, Dr. Jones said Mr. Davis's shoulder injury did not meet the "51% requirement to be covered under Workmen's Compensation." In reaching his conclusion, Dr. Jones considered that the video showed Mr. Davis did not react "to the small bump," that Mr. Davis said nothing about his shoulder until two weeks later, and that the medical records contain two other reported modes of injury.

Mr. Davis testified that August 19 was a hot day, and moving the bin was hard work. He maintained he hurt his shoulder and went to the emergency room with symptoms of a heat stroke. He argued Baptist knew he was at work when the stroke occurred and offered no other origin for it. He wanted reimbursement of approximately $100,000 of medical bills, and he wanted Baptist to furnish ongoing

medical treatment of both injuries.

Baptist argued Mr. Davis is not likely to prevail because he offered no proof that either injury was work-related.

## Findings of Fact and Conclusions of Law

At this expedited hearing, Mr. Davis must show he would likely prevail at trial on his request for medical benefits. Tenn. Code Ann. § 50-6-239(d)(1).

Turning first to the shoulder, the video of Mr. Davis does not show him transversing a dip or any other obstacle. He did not reach for his shoulder or show any signs of physical distress. Further, none of the medical records contain an expert opinion connecting any shoulder condition to Mr. Davis's work. Rather, the records contain inconsistent histories of the date and cause of his shoulder symptoms.

However, one record is clear: Dr. Jones said that the shoulder condition was not work-related.[2] Dr. Jones found the video and medical records offered no support for Mr. Davis's contention. The only contrary opinion is Dr. Lochemes's statement that the injury "may have been" related, and that does not rise to the required connection of greater than 50%.

As to the stroke, Mr. Davis argued that Baptist had immediate actual notice of it and knew of no other origin except his work. However, Baptist is not required to establish the stroke's cause; Mr. Davis is, and he did not produce evidence of a causal connection. His lay testimony alone is not enough, *Argica v. AtWork Personnel Servs.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *7 (Feb. 2, 2016). And the medical records reference only an ischemic stroke, not a heat stroke. Regardless, the records contain *no* opinion relating *any* stroke to his work.

In sum, the Court holds that Mr. Davis did not produce proof that he likely would prevail at trial on his request for medical benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Davis's claim for medical benefits is denied at this time.

---

[2] Dr. Jones said the injury was not "51%" related, not greater than 50% which is the correct standard. However, physicians need not adhere to a rigid recitation of the statutory definition of medical causation if a court can conclude the testimony satisfies the correct definition. *Panzerella v. Amazon.com*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (May 15, 2017).

2. A Status Hearing is set for **Tuesday, May 12, 2026, at 9:30 a.m. Central Time.** The parties must call 855-543-5038 to participate.

   **ENTERED March 18, 2026**.

_Allen Phillips_
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

## APPENDIX

<u>Exhibits</u>
1. Collective medical records submitted by Mr. Davis
2. Collective medical records submitted by Baptist
3. Copies of documents from Baptist's employee health control system
4. Videos of Mr. Davis (stored on Court's M-Drive file)

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on March 18, 2026.

| Name | Via Email | Service sent to: |
|---|---|---|
| Andrew Wener and Scott Kramer, Employee's Attorneys | X | awener@wenerlawfirm.com skramer@wenerlawfirm.com |
| Matthew Kirby and Jacob Swatley, Employer's Attorneys | X | mkirby@harrisshelton.com jswatley@harrisshelton.com |
| Timothy Kellum, Subsequent Injury Fund Attorney | X | timothy.kellum@tn.gov |

_Penny Shrum_
**Penny Shrum, Court Clerk**
**wc.courtclerk@tn.gov**

5



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental   $ _____ per month

| Groceries | $ _____ per month | Telephone | $ _____ per month |
|---|---|---|---|
| Electricity | $ _____ per month | School Supplies $ _____ per month |  |
| Water | $ _____ per month | Clothing | $ _____ per month |
| Gas | $ _____ per month | Child Care | $ _____ per month |
| Transportation | $ _____ per month | Child Support | $ _____ per month |
| Car | $ _____ per month |  |  |
| Other | $ _____ per month (describe: _____ ) |  |  |

10. Assets:

| Automobile | $ _____ | (FMV) _____ |
|---|---|---|
| Checking/Savings Acct. | $ _____ |  |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe:_____ |

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                     RDA 11082